UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | Cr. No. H-06-89 |
| v. | § | C.A. No. H-09-4049 |
| | § | |
| JESUS ALEJANDRO OSORIO, | § | |
| Defendant/Movant, | § | |

UNITED STATES' RESPONSE TO
§ 2255 MOTION TO VACATE SENTENCE

The United States files this response to Defendant JESUS ALEJANDRO

OSORIO'S ("Osorio's") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence.

**I. JURISDICTION**

The United States asserts its affirmative defense of limitations.  See Fed. R.

Civ. P. 8(c); *Day v. McDonough*, 547 U.S. 198, 205 (2006) (describing AEDPA

limitations period as a "defense" and non-jurisdictional).

Osorio directly appealed his conviction and sentence entered May 31, 2007 (R[1]

343 Judgment).  The Fifth Circuit affirmed and entered judgment on August 15, 2008.

*United States v. Osorio,* 288 Fed. Appx. 971 (5th Cir. 2008) (*per curiam*).  Osorio

---

[1] "R" refers to the record in *United States v. Osorio*, H-06-89, in the United States District Court for the Southern District of Texas, Houston Division.  The numeral following indicates the docket entry number.

filed a petition for a writ of certiorari, which was denied by the Supreme Court on December 15, 2008. *United States v. Osorio,* 129 S. Ct. 771 (2008). Thus, the judgment became final on December 15, 2008. 28 U.S.C. § 2255(f)(1) (2008); *United States v. Thomas*, 203 F.3d 350, 355 (5th Cir. 2000) (judgment of conviction became final on date the Supreme Court denied petition for writ of certiorari). A motion under § 2255 must be filed within one year of that date, or by December 15, 2009. 28 U.S.C. § 2255(f)(1).

Osorio's Motion was file stamped by the district court clerk on December 17, 2009, and entered on December 21, 2009, which would be past the filing deadline. The date of mailing, as indicated by a prison stamp on the envelope, as well as the postal service stamp, shows December 16, 2009; again past the filing deadline. The typed date beside Osorio's signature reads December 11, 2009. The Certificate of Service does not give a date on which service was made.

Since Osorio is incarcerated, he may take advantage of the prison mailbox rule, under which his § 2255 motion is deemed filed when delivered into the prison mail system. That date is December 16, 2009, a day after the filing deadline. *See United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (*citing Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998)); *see also, Houston v. Lack*, 487 U.S. 266 (1988).

In addition, Osorio later submitted a Memorandum to § 2255 to Vacate, Set

2

Aside or Correct Sentence, which was entered on January 22, 2010, more than a month after the filing deadline. The Memorandum raised new issues relating to ineffective assistance of counsel. These issues do not relate back, as defined by Fed. R. Civ. P. 15(c), to Osorio's original § 2255 motion, and thus are not timely filed. *See Mayle v. Felix*, 545 U.S. 644, 648-650 (2005); *United States v. Saenz*, 282 F.3d 354, 355-56 (5th Cir. 2002).

Osorio has not established "extraordinary circumstances" to warrant equitable tolling. The one-year filing provision "is not jurisdictional but, instead, is a statute of limitations that, like all limitation statutes, [can] be equitably tolled." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (equitable tolling is a discretionary doctrine that turns on the facts and circumstances of a particular case and is applicable in "rare and exceptional circumstances"); *accord, Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999); *but cf., United States v. Wynn*, 293 F.3d 226, 230 (5th Cir. 2002) (statute of limitations must not be applied too harshly; dismissal of a first § 2255 petition is a particularly serious matter).

## II. GROUNDS ALLEGED

Notwithstanding the United States' timeliness challenge, the grounds alleged by Osorio in his Motion are as follows:

GROUND 1: "Brady/Jencks Material, Surveillance [sic]"

GROUND 2: "Ineffective Assistance of Counsel/ Conspiracy"

GROUND 3: "Traffic Stop"

GROUND 4: "Canine Dog Alertness [sic]"

GROUND 5: "Arrest, Aiding and Abetting"

GROUND 6: "Witness's [sic] Statements"

GROUND 7: "Petitioner's Involvement"

GROUND 8: "Evidence Seized at Petitioner's Residence"

In addition, Osorio filed an accompanying Declaration. It contains a repeat of many claims asserted in the original motion.[2]

Osorio's Memorandum in support, filed a month after the motion, restates many of his previously-noted points.[3] However, it also raises two new issues:

---

[2] In his Declaration, Osorio asserts that he was not involved in the drug trade; that there was no evidence linking him to the conspiracy to distribute narcotics except false statements from 2 co-defendants who were promised leniency; that government witness testimony never put him in the conspiracy; that he did not appear in any of the surveillance videos; that he was at work during the surveillance; that he was just a passenger in the van; that the cocaine in the vehicle could not be perceived by sight or smell; that the chain of custody was broken when police moved the van; that he gave consent to search his apartment because he knew there was no cocaine there; that there was no probable cause for his arrest, and that he is hard-working and values his freedom.

[3] Osorio's Memorandum contains assertions that he was wrongly convicted of guilt by association; that he does not appear in the surveillance; that he was at work during the surveillance and thus could not be part of the conspiracy; that he didn't know anything about a drug transaction; that he was a mere passenger in the van; and that the drugs could not be seen or smelled.

GROUND 9: Ineffective Assistance of Counsel, James Hearing (Co-Conspirator Statement)

GROUND 10: Ineffective Assistance of Counsel, Prior Drug Transaction

The United States asserts that most of these issues are not cognizable in a motion under § 2255; however, the ineffective assistance of counsel issues are, and are analyzed at length below.

## III. FACTS AND PROCEEDINGS

### A. Disposition Below

Osorio and his seven co-defendants were charged by indictment on March 21, 2006, in the United States District Court for the Southern District of Texas, Houston Division, with one count of conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii), and one count of possession with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 18 U.S.C. § 2 (R 22 Indictment).  Osorio pleaded not guilty and was tried by a jury (Harmon, J., presiding), along with two co-defendants (R 175 Minute Entry; R 385 Trial Transcripts).

After a four-day trial, on November 20, 2006, the jury found all three defendants guilty on both counts (R 192 Jury Verdict).  The district court sentenced Osorio on May 25, 2007, to 151 months in prison and a five-year term of supervised

release (R 342 Minute Entry; R 343 Judgment).  The court did not impose a fine but did order Osorio to pay a $200 special assessment (*Id*.).

Osorio appealed to the Fifth Circuit Court of Appeals, which affirmed.  *United States v. Osorio,* 288 Fed. Appx. 971 (5th Cir. 2008) (*per curiam*).  Following denial of a petition for writ of certiorari by the United States Supreme Court, this motion was filed.

### B.  Facts of the Case

Osorio went to trial with two co-defendants, Mr. Percel and Mr. Vasquez.  The other five co-defendants, Messrs. Escobar, Hernandez, Deleon, Garcia and Arias, had already pleaded guilty.  The evidence showed that a group of sellers – Escobar, Deleon and Garcia – conspired to sell about 35 kilograms of cocaine to a group of buyers – Percel, Vasquez and Arias – using two middlemen, Osorio and Hernandez.  The events occurred in Houston, Texas, on February 21, 2006.

The sellers and the buyers had met at Osorio's apartment previously, and a cocaine transaction was discussed.  Osorio said that he had "clients" and discussed "the amount we could work with," about 25 to 35 kilograms.

The 35 or so kilograms of cocaine was transported from Mexico and stored at Osorio's Houston apartment.  It was to be sold for about $14,500 - $15,000 per kilogram, with Osorio taking a commission of about $500 per kilo.

Drug Enforcement Agency ("DEA") agents and Pasadena police officers watched as the parties carried out the deal.

The buyers, from the East Coast, assembled at Osorio's apartment on the day in question. Osorio was not there at the time. Osorio communicated with the parties through the course of the transaction via cell phone.

Part of the cocaine was moved to a stash house on Alejo Street, where it was repackaged by the buyers, guarded by the sellers. Each kilogram was wrapped in plastic, coated with axle grease, mustard and menthol to mask its odor, wrapped with a layer of green cellophane, and finally placed in a plastic bag that was vacuum-sealed. The project was finished at about 9:00 P.M.

One of the buyers had driven to Houston in a rented minivan with Illinois plates, which was to be used to transport the product back to the East Coast. After the packaging project, Osorio, along with a seller and a buyer, moved the minivan from Osorio's apartment to the stash house. There the buyers hid 10 kilograms of the cocaine in a natural void in the back of the van, while the sellers observed, and Osorio waited inside the house.

At about 11:10 P.M., a buyer drove the minivan, with Osorio as a passenger, toward Osorio's apartment. They were accompanied by another conspirator in an Explorer. The plan was, upon arrival at Osorio's apartment, to park the loaded

7

minivan, and Osorio would drive an Audi from there back to the stash house. The
Audi was to serve as a second load vehicle for the next 25 kilograms of cocaine, and
the conduit for the purchase money to be paid to the sellers upon its arrival at the
stash house.

Law enforcement officers thwarted the plan when they effected a traffic stop
on the minivan, and found the 10 kilograms of cocaine concealed in the right quarter
panel behind the taillight. The Explorer circled back by the traffic stop, then returned
to the Alejo stash house. All remaining parties got in and the vehicle took off at high
speed to Osorio's apartment; they were later arrested there.

Osorio consented to a search of his apartment. Agents recovered
industrial-sized green Saran Wrap and vacuum seal bags that were identical to those
in which the confiscated cocaine was wrapped. Also found were a small scale and
plastic bags containing cocaine residue.

Searching the Alejo stash house, agents recovered 25 kilograms of cocaine.
They also found paraphernalia used in packaging the cocaine, including a vacuum
heat sealer, Febreeze, Vick's VapoRub, scissors, axle grease, gloves, heat seal bags,
a scale, cord, and green cellophane, as well as a ratchet tool set used to pull the panel
off the minivan, and a money counter. A search of another stash house in a different
location revealed more drug trafficking paraphernalia, along with $47,000 cash, a

handgun, and another 8 kilograms of cocaine.

Other facts are presented below under the arguments for which they are relevant.

### C.  Presentence Investigation Report

The Presentence Investigation Report ("PSR") held Osorio accountable for only 34.8 kilograms of cocaine.  PSR ¶ 37.  It calculated Osorio's total offense level at 34, PSR ¶ 53, and his criminal history category as I.  PSR ¶ 56.  The advisory Guidelines range was determined to be 151 to 188 months.  PSR ¶ 78.  The statutory minimum for the offense is 10 years, and the maximum is life in prison.  PSR ¶ 35.

The district court sentenced Osorio to the lowest end of the range, 151 months in prison on each count, to run concurrently, followed by five years of supervised release.  The court ordered a $200 special assessment, but imposed no fine.

## IV. LEGAL ANALYSIS

### A. Standing

Osorio seeks federal *habeas corpus* relief under 28 U.S.C. § 2255 (eff. Apr. 24, 1996), from his sentence imposed in the Houston Division of the Southern District of Texas.  A § 2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence."  *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted).  Relief under a § 2255 motion "is warranted for errors that

occurred at trial or sentencing." *Id.*  Osorio seeks relief from his sentence, so he has standing to invoke the provisions of § 2255.

### B.  Collateral Attack

Section 2255 of Title 28, United States Code, provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack. *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995); *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994); *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992); and 28 U.S.C. § 2255.[4]

Once an appeal of a conviction is exhausted or, if the right to appeal was waived, courts are "entitled to presume that the defendant stands fairly and finally convicted." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (*citing United States v. Frady*, 456 U.S. 152, 164 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991)).  Thus, motions to vacate sentences "may raise only

---

[4] "A prisoner in custody ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).

constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citations omitted); *see Davis v. United States*, 417 U.S. 333, 346 (1974); *Hill v. United States*, 368 U.S. 424, 428 (1962).

Stated in the converse, non-constitutional violations of federal law are not cognizable on collateral review. *United States v. Timmreck*, 441 U.S. 780, 783-84 (1979).

### C. Burden of Proof

The burden of proof in a § 2255 proceeding rests on the prisoner. *Kuhlmann v. Wilson*, 477 U.S. 436, 445 (1986). Osorio bears the burden of proving facts which would entitle him to relief on his motion to vacate, *Barnes v. United States*, 579 F.2d 364 (5th Cir. 1978), or on a collateral attack on his conviction. *Coon v. United States*, 441 F.2d 279 (5th Cir. 1971).

### D. Procedural Default

Some issues raised by Osorio in the instant controversy were not raised on direct appeal; therefore this court must determine whether relief is procedurally barred. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). The Court of Appeals for the Fifth Circuit

decided, *en banc*, that "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or that he is 'actually innocent,' *Murray*, 477 U.S. at 496; *Smith v. Murray*, 477 U.S. 527, 537 (1986)." *United States v. Shaid*, 937 F.2d 228, 229 (5th Cir. 1991)(*en banc*). *See also Bousley v. United States*, 523 U.S. 614, 622 (1998); *Strickler v. Greene*, 527 U.S. 263, 282-83 (1999) (claim that the government violated *Brady* raised for the first time in an action for habeas corpus relief subject to analysis for procedural default).

The *Shaid* Court observed that a collateral challenge cannot do service for an appeal. *Shaid,* 937 F.2d at 231 (*citing United States v. Frady*, 456 U.S. 152, 165, (1982)). After conviction, and exhaustion or waiver of any right to appeal, the court is entitled to presume that the defendant stands fairly and finally convicted. *Id.* at 232 (*quoting Frady*, 456 U.S. at 164). A defendant can challenge his conviction after it is presumed final only on issues of jurisdictional or constitutional magnitude. *Id*. at 232 (*citing Hill v. United States*, 368 U.S. 424, 428 (1962)). An issue cannot be raised for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error. *Id*. at 232 (*citing Frady*, 456 U.S. at 168). If the error is not of constitutional or jurisdictional

magnitude, the defendant must show that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice. *Id.* at 232, n.7 (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).

A defendant must meet the cause and actual prejudice test even when he alleges a fundamental constitutional error. *Id.* at 232 (*citing Murray v. Carrier*, 477 U.S. 478, 493 (1986)).

Osorio must show cause that would excuse his failure to have raised the subject claims on direct appeal, and actual prejudice from the error that he now alleges. Osorio does not address his cause and prejudice burden, and wholly fails to meet it.

### E.  Specific Grounds Raised --- Non-Constitutional

The grounds raised by Osorio (aside from those alleging ineffective assistance of counsel), are addressed individually as follows:

### GROUND 1: "Brady/Jencks Material, Surveilance [sic]"

Osorio appears to claim that his right to privacy under the 4th amendment was violated by law enforcement surveillance.  He states that the reason for the surveillance, if known, would have exculpated him, and thus constitutes Brady/Jencks material.  Osorio specifically alleges prosecutorial misconduct for not disclosing agent debriefing notes.  Osorio provides no further details, nor does he reference

specific events, statements, exhibits, or the record.

Osorio's complaint fails for several reasons.  First, fourth amendment claims are not cognizable on collateral review as long as the defendant had a "full and fair" opportunity to litigate the claim on direct appeal.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *accord, U.S. v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003).  Osorio had a jury trial and was represented by able counsel on direct appeal.  There was ample opportunity to raise this issue in that forum.

Second, Osorio has not provided sufficient detail upon which relief can be granted.  He does not identify the nature of the allegedly withheld information, or how it might have exculpated him, or even give the court and the United States some idea where to look for facts to support his allegation.

Third, Osorio has not met his burden of showing cause (why he didn't raise the *Brady* issue on direct appeal) and prejudice (how the omission negatively affected his case).  A claimed *Brady* violation, raised for the first time in a § 2255 motion, is subject to analysis for procedural default.  *Strickler v. Greene*, 527 U.S. 263, 282-83 (1999).  "To succeed on a *Brady*[5] claim, a defendant must establish (1) that evidence was suppressed; (2) that this evidence was favorable to the accused; and (3) that the evidence was material either to guilt or punishment." *Jackson v. Johnson*, 194 F.3d

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

14

641, 648 (5th Cir. 1999) (*citing Strickler v. Green*, 527 U.S. 263 (1999) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence")); *Felder v. Johnson*, 180 F.3d 206, 212 (5th Cir. 1999); *United States v. Fisher*, 106 F.3d 622, 635 (5th Cir. 1997); *United States v. Neal*, 27 F.3d 1035, 1050 (5th Cir. 1994) (quoting *United States v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991)). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is the probability sufficient to undermine confidence in the outcome." *Jackson*, 194 F.3d at 649-50; *Neal*, 27 F.3d at 1050 (*quoting United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Osorio's Ground 1 simply teeters on self-serving and unsubstantiated allegations, woefully fails to meet legal standards, and should be denied.

### **GROUND 3: Traffic Stop**

Osorio asserts that he didn't know drugs were hidden in the van in which he was arrested. He also opines that since no traffic ticket was issued, it proves there was no probable cause or reasonable suspicion to stop the van. Osorio also claims that giving consent to search his apartment shows he must be innocent. Osorio

provides no further details, nor does he reference specific events, statements, exhibits, or the record.

This complaint also fails.  This is a fourth amendment claim, which is not cognizable on collateral review when the defendant had a "full and fair" opportunity to litigate the claim on direct appeal.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *accord, U.S. v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003).  Osorio's jury trial and appeal provided ample opportunity to raise this issue.  Morever, there is insufficient detail to consider the matter, and Osorio has not addressed his cause and prejudice burden.

Osorio's Ground 3 is based on subjective, unsubstantiated allegations, and is legally inadequate.  It should be denied.

## GROUND 4: Canine Dog Alertness [sic]

Osorio asserts that when police moved the van out of the street, it broke the "chain of responsibility" and prevented him from seeing the police canine alert to the cocaine.  Perhaps Osorio intends to challenge the scope of the search as exceeding that warranted by the circumstances of the traffic stop.  In addition, Osorio challenges the probable cause for his arrest and violation of his fourth amendment rights.  Osorio provides no further details, nor does he reference specific events, statements, exhibits, or the record, nor provide authority to support or help explain his position.

16

This complaint fails too, for the same reasons as in the two preceding paragraphs: this is a fourth amendment issue and is not cognizable in this forum; no showing of cause and prejudice; and insufficient detail.

Osorio's Ground 4 is, on one hand, based on unconventional and confusing legal concepts, and, on the other hand, redundant to other grounds he raises which are also without merit.  Ground 4 should be denied.

### **GROUND 5: Arrest, Aiding and Abetting**

Osorio contends that he was not present for any communications or acts relating to the conspiracy, that he does not appear in any of the surveillance media, and, in apparent contradiction, that his mere presence does not make him guilty.

Osorio's complaint fails.  First, non-constitutional violations of federal law are not cognizable on collateral review.  *United States v. Timmreck*, 441 U.S. 780, 783-84 (1979).  This is essentially a sufficiency-of-the-evidence challenge, which is not appropriately raised in this proceeding.

Second, Osorio has not met his burden of showing cause (why he didn't raise the issue on direct appeal) and prejudice (how the omission negatively affected his case).  He has addressed neither cause nor prejudice.

Osorio's Ground 5 relies on self-serving and subjective allegations of fact, and should be denied.

17

## GROUND 6: "Witness's [sic] Statements"

Osorio states that two codefendants made statements on promises of leniency, thus they are biased and not credible. Osorio also observes that the witnesses' admissions that they were consuming cocaine renders their testimony unbelievable.

It is unclear to which of the 7 codefendants Osorio refers. Two codefendants went to trial with him and testified. Five other codefendants pled guilty before Osorio's trial. Osorio does not identify the witness, nor what the witness said, nor in what context (debriefing? trial testimony?), nor how it impacted his case.

The government must not deliberately use perjured testimony nor encourage the use of perjured testimony. *United States v. Bethley*, 973 F.2d 396, 399 (5th Cir. 1992) (*citing Napue v. Illinois*, 360 U.S. 264, 269-70 (1959); *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987)). To demonstrate a due process violation stemming from the use of perjured testimony, the defendant must show that the prosecution knowingly presented materially false evidence to the jury. *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994); *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir. 1993); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). To obtain a new trial on the ground that the United States used false testimony, the defendant must show "(1) the testimony was false, (2) the prosecution knew it was false, and (3) it was material." *United States v. Grosz*, 76 F.3d 1318,

1327 (5th Cir. 1996).  The judge's job, in connection with an alleged *Napue* violation, is to grant a new trial when the fact-finding function of the jury has been corrupted by material falsehood of which the government was aware, that occurred as part of the prosecutor's case.  *United States v. O'Keefe*, 128 F.3d 885, 898, 894 (5th Cir. 1997).  To constitute a due process violation, the perjury must have been material to the defendant's conviction. *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998).  "Evidence is material if a reasonable probability exists that had the evidence been disclosed to the defense, the proceeding's result would have been different." *Blackmon v. Johnson*, 145 F.3d 205, 208 (5th Cir. 1998).

This complaint fails for reasons similar to the others.  A non-constitutional violation of federal law is not cognizable here; no showing of cause or prejudice; and insufficient facts for analysis or relief.

Osorio's Ground 6 is overly vague and relies on self-serving and subjective allegations of fact; it should be denied.

## GROUND 7: "Petitioner's Involvement"

Osorio relies on the statement of a "paid government witness" that he "didn't touch the drugs" (R. 646) to conclude that he is innocent.

As this issue is essentially a challenge to the sufficiency of the evidence, it is not a claim of a constitutional violation and therefore not cognizable in this

proceeding.  As before, Osorio has neither addressed his cause and prejudice burden, nor provided sufficient detail upon which the relief he seeks can be considered.

Ground 7 is for the most part irrelevant, and besides that relies upon a conclusion of questionable rationality; it should be denied.

## GROUND 8: "Evidence Seized at Petitioner's Residence"

Osorio urges that the evidence seized from his residence, including plastic wrap and a quantity of cocaine consistent with personal use, are not part of the indictment and should be dismissed.

Osorio's complaint is unclear, as is the relief he seeks.  Perhaps Osorio means to challenge the validity of the consent he gave to search his apartment.  In any event, the issue he raises here is not cognizable, either because it is a fourth amendment claim or because he asserts a non-constitutional violation of federal law.  Moreover, he again fails to address his cause and prejudice burden, and does not provide the court with sufficient detail upon which relief can be granted.

Ground 8 is so vague and without legal merit that it should be dismissed.

## F.  Ineffective Assistance of Counsel

Osorio's ineffective assistance of counsel claims are exempt from the "cause and prejudice" requirement and may properly be brought for the first time in a § 2255

motion. *United States v. Shaid*, 916 F.2d 984, 986-87 (5th Cir. 1990); *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir. 1987). The Supreme Court has emphasized that a 28 U.S.C. § 2255 motion is the preferred method for raising a claim of ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). This is so because such claims raise an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal. *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002) (*citing United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992)); *see also*, *United States v. Sevick*, 234 F.3d 248, 251 (5th Cir. 2000).

To prevail on a claim of ineffective assistance of counsel, a movant must show (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 689-94 (1984); *see Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *see also Glover v. United States*, 531 U.S. 198, 202-04 (2001) (discussing factors to consider in evaluating claim of demonstrated prejudice). When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The determination whether the performance of counsel was deficient is based upon the law as it existed at the time of trial. *Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (*citing*

*Strickland*, 466 U.S. at 690); *Lucas v. Johnson*, 132 F.3d 1069, 1078 -79 (5th Cir. 1998).

To show *Strickland* prejudice, a movant must demonstrate that counsel's errors were so serious as to "render[ ] the result of the trial unreliable or the proceeding fundamentally unfair." *Fretwell*, 506 U.S. at 372. A failure to establish both deficient performance and prejudice defeats the claim. *Strickland*, 466 U.S. at 697; *Carter v. Johnson*, 131 F.2d 452, 463 (5th Cir. 1997); *Micheaux v. Collins*, 911 F.2d 1083, 1090-91 (5th Cir. 1990).

Under the first prong, counsel's performance is deficient if it is objectively unreasonable. *Strickland*, 466 U.S. at 688; *Hernandez v. Johnson*, 213 F.3d 243, 249 (5th Cir. 2000). To prevail on a claim that counsel's performance was so defective as to require reversal of a conviction, a movant must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment and that the deficient performance actually prejudiced his defense. The latter requires a showing that counsel's errors were so serious as to deprive the movant of a fair trial, that is, a trial whose result is reliable.

Constitutionally effective assistance of counsel is not errorless counsel and not counsel judged ineffective by hindsight. The determination of whether counsel has rendered reasonably effective assistance turns in each case on the totality of facts in

22

the entire record.  Thus each case must be judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against her, and the strength and complexity of her possible defenses.  *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983).

Under the second prong, prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *accord Glover*, 531 U.S. at 204 (citing cases). Significantly, the petitioner making the claim of ineffective assistance must identify the acts or omissions that are alleged to have been the result of unreasonable professional judgment.  *Strickland*, 466 U.S. at 690.  Mere conclusory allegations are insufficient to raise a constitutional issue in a habeas case.  *United States v. Woods*, 870 F. 2d 285, 288 n.3 (5th Cir. 1989); *Schlang v. Heard*, 691 F. 2d 796, 799 (5th Cir. 1982); *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993) ("[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.").

Substantive legal issues, when shrouded in the cloak of ineffective assistance of counsel, fall within the constitutional aegis.  *See Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986).  But the Court in *Kimmelman* explained that such issues must meet the "rigorous standard" of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

*Kimmelman*, 477 U.S. at 371.

Osorio complains of ineffective assistance of counsel in 3 issues:

### GROUND 2: "Ineffective Assistance of Counsel/ Conspiracy"

Osorio seems to complain that his counsel was ineffective for not presenting certain facts to negate his role in the conspiracy, including that he had a wage-earning job, that he was not financially or personally capable of having $4.5 million in cocaine, and that he didn't cooperate in the conspiracy. Osorio also claims his counsel was inadequate for failing to obtain full discovery (because of prosecutorial misconduct), to present that undiscovered evidence at trial, to argue a mere presence defense, or to secure a *Kastigar* hearing to determine whether evidence was obtained in violation of his fifth amendment rights. No further factual details or references to the record are provided.

Osorio had a four-day jury trial, and was represented by able counsel throughout. Osorio did not testify, but did put on a defense and present witnesses, including his employer.[6] Therefore the fact of Osorio's employment was in evidence. Other questions, such as whether he was capable or desirous of drug trafficking, or

---

[6] Osorio's boss Robert Bosley testified that Osorio was at work on the day in question, that he sometimes works seven days a week, that it is not unusual for him to work as long as 12 hours a day, and that he (Bosley) did not know what time Osorio left that day.

24

whether he cooperated in the conspiracy, are subjective and rely on Osorio's self-serving statements.

As to the accusations of failing to obtain full discovery, to present the evidence, prosecutorial misconduct, etc., Osorio does not provide sufficient facts upon which his request can be considered.  As to the fifth amendment and *Kastigar* issue, it is not clear how that legal principle applies in Osorio's case.

In sum, these are conclusory allegations.  Osorio has not identified the acts or omissions that are alleged to have been the result of unreasonable professional judgment.  *Strickland v. Washington*, 466 U.S. at 668 (1984).  Mere conclusory allegations such as these are insufficient to raise a constitutional issue in a habeas case.  Ground 8 should be denied.

### GROUND 9: Ineffective Assistance of Counsel, James Hearing (Co-Conspirator Statement)

Osorio opines that his counsel was ineffective for not securing a *James* hearing, to determine whether an out-of-court statement of a co-conspirator should be admitted.  No further factual details or references to the record, including the name of the co-conspirator or the statement, are provided.

 Osorio has not alleged any facts in support of this claim, beyond a general accusation.  Because he has not established that counsel's performance was deficient,

and that he was prejudiced thereby, no relief is available to Osorio.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (conclusory allegations of ineffective assistance of counsel are insufficient to warrant relief).  Ground 9 should be denied.

<u>**GROUND 10: Ineffective Assistance of Counsel, Prior Drug Transaction**</u>

Osorio says that it was ineffective of his counsel to allow a co-conspirator to testify to Osorio's previous drug dealings, because the drugs in the van could not be seen or smelled, so therefore he had no knowledge of their presence.

Though Osorio gives no more detail as to the witness or the testimony of which he complains, the United States notes that this issue was raised and resolved in Osorio's direct appeal.

At trial, a co-defendant testified that Osorio had taken part in an earlier, similar transaction.  The essential similarity was that the same buyers as in the instant case spent an hour or so rewrapping 15 kilograms of cocaine at Osorio's apartment while he watched television nearby.

In the context of a Fed. R. Evid. 404(b) issue, the Fifth Circuit held that, since intent is always material in a drug trafficking case, evidence of Osorio's involvement in a prior drug transaction was admissible.  *United States v. Osorio,* 288 Fed. Appx. 971, 973 (5th Cir. 2008) (*per curiam*).  The court noted that the jury could have

concluded that an individual is usually aware of, and involved in, a 60-90 minute transaction occurring in their own home, which included a total stranger, that results in the packaging and removal of 33 pounds of cocaine. *Id.* The connection between Osorio and the earlier transaction was deemed to have been sufficiently established and relevant, probative as to his role, and any prejudice was prevented by a limiting instruction. *Id.*

As pertains to the ineffective assistance of counsel accusation, it must fail because counsel in fact *did* object to the testimony and pursued the issue on direct appeal. Under the law of the case doctrine, once issues in a particular case have been raised and decided on a direct appeal, they are barred from collateral review under § 2255. *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (*citing United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997). The law of the case doctrine is the rule under which the trial court and the appellate courts are bound by any findings of fact or conclusions of law made by the appellate court in a prior appeal of the case at issue. *United States v. Burns*, 662 F.2d 1378, 1384 (11th Cir. 1981).

The Fifth Circuit outlined the scope of the law of the case doctrine in *United States v. 8.41 Acres of Land*, 783 F.2d 1256 (5th Cir. 1986):

The doctrine of the law of the case forecloses a different result from that

> which was obtained in the earlier of two appeals.  A decision of a legal
> issue by an appellate court establishes the law of the case which must be
> followed in all subsequent proceedings in the same case whether those
> proceedings take place at the trial court or in the appellate court, unless
> one of the following three exceptions is met: (1) a subsequent trial
> produces substantially different evidence, (2) controlling authority has
> since made a contrary decision of law applicable to such issue, or (3) the
> prior decision was clearly erroneous and would work manifest injustice.
> *EEOC v. Int'l Longshoreman's Association*, 623 F.2d 1054, 1058 (5th
> Cir. 1980).  *See, e.g., Chapman v. National Aeronautics and Space
> Administration*, 736 F.2d 238, 241 (5th Cir. 1984); *United States v.
> 162.20 Acres of Land*, 733 F.2d 377, 379 (5th Cir. 1984).  The doctrine
> does not reach questions which were not decided in a former
> proceeding, but it does cover those issues decided by necessary
> implication as well as those decided explicitly.  *Int'l Longshoreman's*,
> 623 F.2d at 1058; *Chapman*, 736 F.2d at 241.

*United States v. 8.41 Acres of Land*, 783 F.2d at 1259.

The court recently elaborated on the law of the case doctrine in *United States
v. Matthews*, 302 F.3d 652 (5th Cir. 2002).  "Under the law of the case doctrine, an
issue of fact or law decided on appeal may not be reexamined by the district court on
remand or by the appellate court on a subsequent appeal."  *Id*. at 657 (*quoting Tollett
v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002)).  The court explained that the law
of the case is not a jurisdictional rule, but a discretionary practice.  "The doctrine
'merely expresses the practice of courts generally to refuse to reopen what has been
decided, not a limit to their power."  *Id*. (*quoting Messinger v. Anderson*, 225 U.S.
436, 444 (1912)).

The doctrine is not inviolate and is subject to three exceptions (1) the evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice. *Id.* at 657.

In the instant case, the court of appeals explicitly addressed and ruled against Osorio on this issue. Accordingly, Osorio's motion should be denied.

## V. EVIDENTIARY HEARING UNWARRANTED

In a § 2255 proceeding, a hearing is only required if: (1) the record, as supplemented by the trial judge's personal knowledge or recollection, does not conclusively negate the facts alleged in support of the claim for § 2255 relief; and (2) the movant would be entitled to post-conviction relief as a legal matter if his factual allegations were true. *Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979); *see United States v. Briggs*, 939 F.2d 222, 228 (5th Cir. 1991).

Osorio has offered the court no new relevant or credible evidence regarding the evidence or procedure or legal representation related to his conviction on drug trafficking charges. No evidentiary hearing is necessary, since no fact issues are presented. *United States v. Samuels*, 59 F.3d 526, 530 & nn.16-17 (5th Cir. 1995) (citations omitted) (when an issue is refuted by the record, no evidentiary hearing is necessary); *United States v. Bartholomew*, 974 F.2d 39, 41-42 (5th Cir. 1992) (same).

## VI.  CONCLUSION

Osorio's complaints are mostly based on self-serving and unsubstantiated allegations of fact and vague aspersions, coupled with some legal jargon that, for the most part, has no relevance to his case.  The United States asserts its affirmative defense of limitations, denies each and every allegation of fact made by Osorio except those supported by the record and those specifically admitted herein, demands strict proof thereof, and urges the court to dismiss Osorio's motion to vacate sentence.

Respectfully submitted,

JOSE ANGEL MORENO
United States Attorney

s/ Cynthia DeGabrielle
CYNTHIA DeGABRIELLE
Assistant United States Attorney
Texas Bar No. 12188680
P.O. Box 61129
Houston, Texas  77208
(713) 567-9102
Fax (713) 718-3302

## CERTIFICATE OF SERVICE

I, Cynthia DeGabrielle, Assistant United States Attorney, certify that a copy of the foregoing response has been served by placing it in the United States mail, postage prepaid, June 4, 2010, addressed to:

Jesus Alejandro Osorio
Reg # 39437-179
FCI Beaumont Low
P.O. Box 26020
Beaumont, TX 77720

s/ Cynthia DeGabrielle
CYNTHIA DeGABRIELLE
Assistant United States Attorney

31